**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA**

**v.** **CAUSE NO. 1:15-cr-1-LG-RHW-2**

**KENNETH CASEY**

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

**BEFORE THE COURT** is the [167] Motion for Compassionate Release filed by Defendant, Kenneth Casey. The Government filed a [171] Response, to which Defendant filed a [175] Reply. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that Defendant's Motion should be denied.

**BACKGROUND**

On April 14, 2015, Defendant entered a plea of guilty to conspiracy to possess with intent to distribute more than 500 grams of cocaine hydrochloride, in violation of 21 U.S.C. § 846. On August 7, 2015, the Court sentenced Defendant to 480 months' imprisonment, 5 years' supervised release, a fine of $40,000.00 with interest waived, and a special assessment in the amount of $100.00. Defendant is currently scheduled to be released January 7, 2048.

On November 21, 2022, Defendant filed a 41-page long *pro se* Motion for Compassionate Release, which variously cites the COVID-19 pandemic, changes in the sentencing scheme, developments in Supreme Court precedent, and his post-sentencing rehabilitation as circumstances warranting his release. (*See generally*

Mot. Compassionate Release, ECF No. 167). On December 9, 2022, the Government filed a response to the Motion, in which it resists each of Defendant's arguments. (Govt.'s Resp. Def.'s Mot. Compassionate Release, ECF No. 171). Defendant then filed a reply on December 23, 2022, now represented by counsel, which set forth his arguments in greater detail.

## DISCUSSION

### I. Ripeness of Defendant's Motion

A defendant must first satisfy one of two exhaustion avenues before the court may consider a motion for compassionate release: (1) "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf;" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). The Fifth Circuit has held that this exhaustion requirement "is a paradigmatic mandatory claim-processing rule" which the court "*must* enforce" if the Government raises it. *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020) (emphasis in original).

Here, the Government raised the exhaustion issue in its opposition brief. However, in his [175] Reply, Defendant directs the Court's attention to his letter to Warden Garrett at FCI Pollock, an exhibit attached to his original Motion. (*See* Request, ECF No. 167-1). This submission, dated August 31, 2022, asks the Warden to "file a motion for a reduction in sentence on my behalf in light of the First Step Act" and outlines his reasons for the request. (*Id.*). Defendant

represents that no response was received by the time he filed his Motion on November 21, 2022. With no indication to the contrary, the Court finds that Defendant has exhausted his administrative remedies. *See, e.g., United States v. Smith*, No. 1:18CR08-HSO-JCG, 2021 WL 4256288, at *2 (S.D. Miss. Sep. 17, 2021) ("The Government has not brought forth any evidence to dispute that Smith has exhausted his administrative remedies, and the exhibits Smith has submitted with his Motion lead the Court to conclude he has properly exhausted his administrative remedies.").

## II. Merits of Defendant's Motion

Turning to the merits, a court can reduce a sentence "if it finds that extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Under Fifth Circuit precedent, the Court must consider whether factors, including those outside the U.S.S.G. § 1B1.13 policy statement—which proves to be a helpful guidance, *see United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021)—constitute "extraordinary and compelling" reasons justifying a reduction in sentence. *See United States v. Cooper*, 996 F.3d 283, 289 (5th Cir. 2021). The Court also must consider the factors set forth in § 3553(a), to the extent they are applicable. *See* 18 U.S.C. § 3582(c)(1)(A). Here, Defendant has set forth his arguments for compassionate release in an extensive but somewhat disorganized manner. The Court therefore groups his arguments into categories and considers each in turn.

**A. COVID-19 Pandemic and Medical Conditions**

Defendant's first major basis for relief regards the COVID-19 pandemic. He argues at length that the Bureau of Prisons (BOP) has mishandled the pandemic, citing a *Forbes* article from April 2022, the resignation of former director Michael Carvajal, Department of Justice (DOJ) investigations into the BOP, and other such materials. (*See* Mot. Compassionate Release, 5-10, ECF No. 167). Defendant alleges that the BOP has failed to maintain a safe environment for inmates and employees—Defendant reports that "only 49% of employees" are vaccinated—and has underreported COVID-19 cases. (*Id.* at 10-11). He also claims that a group of United States Senators have called for investigations into the BOP, that inmates have filed a class action against the BOP in the Central District of California, and other such news items of this nature. (*Id.* at 13-15).

Although the Court does not doubt the sincerity of Defendant's grievances with the BOP's handling of the COVID-19 pandemic, the Court finds that it cannot serve as a legitimate basis for the relief requested. First, "[b]oth international and domestic health authorities, particularly the World Health Organization, the United States Centers for Disease Control and Prevention, and the federal government, have made clear that the COVID-19 pandemic has ended." *United States v. Ruiz*, No. 4:19CR269-DSJ, 2023 WL 3628265, at *5 (E.D. Tex. May 24, 2023) (internal footnotes omitted). Second, "[t]his Court has repeatedly recognized that the BOP is taking significant measures to protect the health of the inmates in its charge." *See United States v. Betton*, No. 1:19CR63-LG-JCG-5, 2022 WL 815067,

at *1 (S.D. Miss. Mar. 16, 2022). And "[t]he BOP's response to the pandemic . . . is sufficient given the circumstances and logistical issues presented by a prison environment." *United States v. Turner*, No. 2:15CR1-KS-MTP, 2022 WL 1072880, at *3 (S.D. Miss. Apr. 8, 2022). Again, the Court does not doubt that Defendant harbors concerns regarding the pandemic. However, he has not demonstrated inadequate prevention measures at his correctional facility beyond his unfavorable portrait of the BOP's response at a national level.

Third, although Defendant insists otherwise, it is nevertheless true that "'where inmates have refused the COVID-19 vaccine, courts generally denied compassionate release.'" *United States v. Betton*, No., 2022 WL 815067, at *1 (S.D. Miss. Mar. 16, 2022) (quoting *United States v. Cage*, No. 98-194, 2022 WL 718415, at *5 (E.D. La. Mar. 10, 2022)) (cleaned up). Finally, "fear of COVID doesn't automatically entitle a prisoner to release." *Thompson*, 984 F.3d at 435. "The courts that granted compassionate release [on the basis of the pandemic] largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns." *Id.* at 434-35. The Court "'cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner.'" *Turner*, 2022 WL 1072880, at *3. Here, Defendant has not presented a serious medical condition which heightens his risk of severe illness from COVID-19. Hence, COVID-19 does not warrant compassionate release.

Further, in his [175] Reply brief, Defendant refers to a Grade IV Bulbar urethral stricture, which was treated by a urologist—poorly, according to Defendant. He also describes "a high level of streptococcus in his urine" and "a mass in his left calf muscle which the treating physician listed as possibly malignant." (Reply Supp. Mot. Compassionate Release, at 3, ECF No. 175) (referring to Medical Records, ECF No. 173). Here, the Court is guided by the U.S.S.G. § 1B1.13 policy statement. The statement's "comments describe the circumstances in which a 'medical condition' might be sufficiently serious to warrant release." *Thompson*, 984 F.3d at 433. "That is limited to two circumstances: where the defendant has either a terminal illness or a condition 'that substantially diminishes the ability of the defendant to provide self-care . . .'" *Id.* (quoting U.S.S.G. § 1B1.13). Here, Defendant has not even attempted to show that his urological issues (for which he has received medical attention) or possibly malignant mass "substantially diminishes" his ability to care for himself in prison. Therefore, these other items cannot justify compassionate release.

**B. Changes in the Law**

Next, Defendant quotes the Supreme Court's statement "that the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act." *Concepcion v. United States*, 142 S. Ct. 2389, 2404 (2022); (*see* Mot. Compassionate Release, 28-29, ECF No. 167). Defendant argues that he no longer qualifies as a career offender because two of his prior convictions no longer qualify as predicate offenses under

USSG § 4B1.2. (Mot. Compassionate Release, 16-17, ECF No. 167). The Government does not respond.

The Sentencing Guidelines provide that:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG § 4B1.1(a). A defendant's career offender status consequently affects his offense level and criminal history category. The record reflects that Defendant's total offense level of 43 was not affected by his career offender status, because the offense level provided by the enhancement—34—is less than his otherwise applicable offense level of 43. *See* USSG § 4B1.1(b); (*see also* Presentence Investigation Report (PSR) ¶ 157, ECF No. 127). However, his criminal history category was increased from category V to VI due to his career offender status. *See* USSG § 4B1.1(b); (PSR ¶ 171, ECF No. 127).

Thus, were Defendant disqualified as a career offender, his criminal history would have fallen into category V, and his offense level would have remained at 43. This would still produce a guideline range of life imprisonment. As was the case at sentencing, this figure would then be reduced to 40 years per the maximum term provided by statute. *See* 21 U.S.G. § 841(b)(1)(B); USSG § 5G1.1(a). Therefore, it is not necessary to determine whether Defendant's prior convictions qualify as predicate offenses under the career offender enhancement, because Defendant's

argument, even if true, would not have changed the sentencing calculation nor entitle him to relief.

### C. Section 3553 Factors

Finally, the § 3553 sentencing factors must be surmounted for the Court to grant compassionate release. These sentencing factors include the nature and circumstances of the offense and the history of the defendant. The Court may also consider the need for the sentence imposed to reflect the seriousness of the offense, afford adequate deterrence, protect the public, and provide the defendant with needed education, training, and treatment. Further, the Court may also observe the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

Here, Defendant entered a plea of guilty to one count of conspiracy to possess with intent to distribute more than 500 grams of cocaine hydrochloride. As noted above, after considering several offense characteristics, Defendant's total offense level was 43. (PSR ¶¶ 148-60, ECF No. 127). These characteristics included the importation of methamphetamine, his use of a premises in committing the crime, his leadership role, and his acceptance of responsibility. (*Id.*). Because he had a criminal history score of 11, due to several prior convictions, his criminal history category was VI. (*Id.* ¶¶ 161-71). Based on his offense level and criminal history, Defendant's guideline range was life, but his term was capped at 480 months, the statutory maximum. (*Id.* ¶¶ 192-93). Ultimately, Defendant was sentenced to 480 months' imprisonment.

Defendant argues that district courts are authorized to grant compassionate release to defendants with life sentences after favorably applying the § 3553 factors. (Mot. Compassionate Release, 33-34, ECF No. 167) (citing various cases). He also argues that district courts may consider mitigating arguments, which he alleges were prohibited by his career offender status at sentencing. (*Id.* at 35-36). Finally, Defendant offers evidence of his efforts at self-rehabilitation while he has been incarcerated. (*Id.* at 36-37).

Although the Court applauds Defendant's efforts at self-rehabilitation, it finds that the § 3553 factors weigh against release. Defendant maintains a high offense level and extensive criminal history which called for life imprisonment had he not pled to a single count that reduced his maximum term to 480 months. He has not served the "lion's share" of this sentence. *See Thompson*, 984 F.3d at 434. Under these facts, and after considering all the arguments in Defendant's brief, the Court does not find that Defendant's release would protect the public, reflect the severity of the offense, nor afford adequate deterrence thereto.

Defendant also argues that his career offender status creates a sentencing disparity among similarly situated defendants. (Mot. Compassionate Release, 23, ECF No. 167). He principally compares his circumstances to those of the career offender defendant in *United States v. Northcutt*, Crim. No. 04-72, 2021 WL 615207 (W.D. Pa. Feb. 17, 2021), who also maintained an extensive criminal record. However, that defendant had served 89% of his sentence and demonstrated serious medical conditions which raised his risk of serious illness from COVID-19. He also

cites other cases involving other underlying crimes under other statutes, with diverse sets of factual circumstances and sentencing considerations.

But Defendant has not shown that his sentence was uniquely burdensome, or that courts routinely grant compassionate release to comparable defendants. Again, Defendant's 480-month sentence at the statutory maximum was below the guideline recommendation of life imprisonment. The Fifth Circuit has said that "'avoiding unwarranted general sentencing disparities is not a factor that we grant significant weight where the sentence is within the Guidelines range.'" *United States v. Naidoo*, 995 F.3d 367, 383 (5th Cir. 2021) (quoting *United States v. Diaz*, 637 F.3d 592, 604 (5th Cir. 2021)). And "attempted comparisons to defendants convicted of other offenses do not demonstrate a disparity between 'similarly-situated' defendants." *Naidoo*, 995 F.3d at 383 (citing *United States v. Cedillo-Navaez*, 761 F.3d 397, 406 (5th Cir. 2014)).[1] Under these circumstances, the Court finds that Defendant has not presented an extraordinary or compelling reason to justify compassionate release.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [167] Motion for Compassionate Release filed by Defendant, Kenneth Casey, is **DENIED.**

---

[1] Defendant also argues that the Court could impose special terms of supervised release if it finds that he poses a danger to the community. (Mot. Compassionate Release, at 38-39, ECF No. 167). However, again, the Court finds that Defendant's history of criminal convictions and his serious involvement in the instant offense weigh against release from incarceration.

**SO ORDERED AND ADJUDGED** this the 30th day of June, 2023.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE